By the Court. Duer J.
It was insisted, by the counsel for the plaintiff, that the agreement of the defendants, upon which this action is founded, contains two distinct independent stipulations—the first, binding them to satisfy the costs, damages, and charges arising from the pending suits, to which the agreement refers, out of the proceeds of the estate assigned to them; the second, an absolute unconditional promise of indemnity, rendering them liable as individuals, and not merely as trustees. This construction, however, has been rejected by the judge at Special Term, who has decided that the agreement is single and entire, and the indemnity which it promises, an exclusive charge upon the property assigned, and we are satisfied that his decision expresses truly the intention, and is entirely consistent with the language of the parties.
The supposition that the defendants meant to assume the debts of Stainer to any extent, beyond the funds they might be able to realize from the trust estate, is most improbable; there could be no motive or consideration for such an undertaking, nor could we be justified in saying that such was their intention, unless the terms of the agreement were so explicit as to exclude the possibility of a different construction. We add, that had our opinion upon this question coincided with the argument for file plaintiff, it would not be competent to us, as an appellate court, to alter, in conformity to that opinion, the judgment that has been given, since the plaintiff, by his omission to appeal, has precluded himself from denying its justice or propriety. He has virtually assented to the judgment as it stands. He has no right to say that it has not given to hini all the relief to which he can be entitled, and hence the objections which the defendants, as appellants, have raised, are those alone which we have the right to consider. It is true that an appellate court may, in some cases, modify, or even reverse, a part of a judgment or decree which is not embraced in the appeal, but we apprehend that this nroceeding can only be justified where the *72 modification or reversal is necessary to render -the decree, as finally pronounced, entirely consistent.
The only questions, therefore, that we propose to examine are—first, whether the suit in chancery to .set aside the mortgage, and the suit in the Supreme Court upon Stainer’s bond, were the pending suits to which the agreement referred; and, second, whether, assuming this to be the fact, an agreement to satisfy the costs, damages, and charges that might arise from these suits out of the proceeds of the trust estate, has created any obligation which a court of law or equity'is bound ,to enforce.
The agreement is without date, nor is it possible to fix with any certainty the period of its actual execution and delivery.
The complaint alleges that it was made at the same time as the assignment, or shortly thereafter, and the answer admits, or asserts, that both instruments were executed and delivered at the same time. Yet, unless the testimony of Mr. Ellingwood is to be wholly rejected, we are compelled to say that the allegations and the admission are alike erroneous, and indeedit is.only upon the supposition that they are so, that the plaintiff, by hny possibility, can be entitled to recover. The assignment was made in March, 1838, and, according to the testimony of Mr. Ellingwood, no suit was pending at that time in which Stainer individually was plaintiff or defendant, and it is against such suits alone, as we construe the agreement, that he was meant to be indemnified. The chancery suit was commenced in October in the same year, and the suit in the Supreme Court not until February, 1840, and unless the execution of the agreement may be referred to a still later date, there is no pretext for the claims which, by sustaining this judgment, we are required to enforce. It is to suits actually pending at the time of its execution that the indemnity which the agreement promises is expressly confined, nor is it denied that such is the construction that we are bound to adopt. Let it be admitted, for the present, that both the suits in question were pending at the time of the execution and delivery of the agreement, the mere fact of their pendency is by no means sufficient to prove that they are the suits to which it refers. To justify us in adopting this construction of the meaning of the parties it must be at least consistent with the terms of the agree *73 ment, and it is manifest, that the terms may be such as wholly to exclude it. The suits against which alone Stainer was to be indemnified, are not specifically named in the agreement, but are described only in general terms, and it is therefore a first and necessary inquiry whether the suits upon the mortgage and the bond answer the description. If the description embraced only the facts that the suits to which the indemnity was to apply were then pending, and were suits in which Stainer wasplaintiff or defendant, this necessary condition would be fulfilled; but if it embraces other facts, at least as material as those that have been mentioned, and the existence of these facts cannot be affirmed in relation to the suits in question, we know no rule of construction, or principle of equity, that could justify us in saying that they were the suits contemplated by the parties. On the contrary, we may be compelled to say that they were meant to be excluded.
What, then, are the terms of the agreement ? Is the description of the suits intended limited to the facts that have been stated ? By no means. It embraces the additional facts that the suits against which the trustees agreed to indemnify Stainer were suits in which they as trustees were then interested, and which were prosecuted or defended for their benefit; and these facts, so far from being regarded as immaterial, are stated as the leading consideration of the entire agreement. In our judgment, the truth of the description is thus made a condition precedent, necessary to be proved to give any effect to the stipulations that follow. It is of no importance whether other considerations operated upon the minds of the trustees, if it sufficiently appears, that, but for their supposed interest as trustees in the pending suits, they would not have entered into the agreement at all.
Were the defendants then, as trustees, interested in the suits in question % In other 'words, for such is the meaning, were these suits prosecuted or defended for the benefit of the trust estate ? It might have been said that such was the fact in relation to the suit in chancery to set aside the mortgage, had it appeared that the title to the Sandusky lots covered by the mortgage was vested in the defendants as trustees, and that the necessary effect of a favorable decree would have been to have given them the lands discharged from the incumbrance, or to *74 have entitled them, for the benefit of the trust estate, to the repayment of the $2,000 which Stainer had originally advanced as a part of the consideration of the purchase. Bpt we find no evidence whatever of these facts in the pleadings, documents, and testimony which form the case upon which our judgment must be given. It is true that the complaint alleges that the title to the Sandusky lots passed to ,the defendants by force of the assignment; but it also alleges that the lots were the individual property of Stainer, and that their transfer by him to the trustees formed the sole consideration of their agreement to indemnify him, and gave them an immediate interest in defeating the claims of the plaintiff upon the bond and mortgage. And, as we read and understand the complaint, it is upon the truth of these several averments that the plaintiff’s title to relief is emphatically and exclusively rested. At any rate, it is upon the proof of each and all of these averments that his title to relief in our' opinion entirely depends.
That the legal title to the Sandusky lots was vested in Stainer alone is quite certain, and is not denied, and the presumption therefore' is, that he was the sole owner; but if they were his individual property, we can perceive no ground for the assertion that any interest in them, legal or equitable, passed to the defendants by force of the assignment. If they had no interest as trustees in the lots, they could have none in the suits upon the bond and mortgage.. If not so interested, it follows that these suits were not those to which the terms of their agreement relate ; and we add, that had it been proved that it was to these suits that the indemnity promised was meant to relate, the agreement would still be inoperative and void, from an entire failure of the consideration upon which alone it was or could be founded. The assumed fact that the defendants were interested as trustees in the Sandusky lots lies at the foundation of the plaintiff’s case, and can alone sustain it. This foundation removed, the whole fabric falls to the ground.
The terms of the assignment to the defendants are explicit and unambiguous: they leave no room for argument as to the construction of the instrument. The transfer which it makes, so far from embracing the individual property of Stainer, is by express words limited to parthership property,—to property of *75 which, the firm of Stainer, Dutiíh & Co. were then possessed, or to which they had any claim. There was no such possession or claim in relation to the Sandusky lots, if they belonged to Stainer alone. It is true that in a schedule which is annexed to the answer the Sandusky lots are mentioned as a portion of the property assigned; but this circumstance we have no right judicially to notice, since the schedule was not in evidence in the court below; and, had the evidence been given, we do not understand how it could operate to enlarge the terms of the assignment so as to include the separate property of an individual partner. If the lots were in truth the property of the firm, they passed by the assignment, and not otherwise.
It is, however, impossible for us to say, upon the, pleadings and evidence, that the lots were in any sense, legal or equitable, the property of the firm. It is true that the answer denying the averment in the complaint, that they belonged to Stainer alone, alleges that they were purchased with the funds of the partnership, and were therefore, although the legal title was vested in Stainer, really and equitably the property of the firm. But the reply makes a distinct issue upon these allegations, and no evidence whatever has been adduced to sustain them. Even had such evidence been given, it would have afforded no foundation for the relief which the plaintiff seeks, since the rule in equity is invariable, that a plaintiff is never entitled to a judgment unless the proofs upon which he relies correspond with the allegations in his complaint. As the case now stands, neither the plaintiff nor the court has any right to say that Stainer was not the sole and exclusive owner of the Sandusky lots. The conclusion is, therefore, not to be resisted, that, as the defendants as trustees had no interest in the lots covered by the mortgage, they had no interest in the suit instituted by Stainer to set it aside. That they had any interest whatever in the suit against Stainer upon his bond—the debt, damages, and costs on which amount nearly to the whole sum for which the judgment under review has been given—has not been and cannot be pretended. It is evident that whether he succeeded or failed in that suit was to them, as trustees, a matter of entire indifference. His success could not tend to enlarge hor his failure to diminish in any degree the trust estate. Judging, therefore, *76 of the interest of the parties from the terns of their agreement, we are compelled to say that the indemnity promised to Stainer is not applicable to either of the suits to which the judgment that has been given alone relates, and consequently that the judgment, as founded either upon an erroneous interpretation of the agreement, or upon a mistaken view of the evidence or of the law, must be reversed.
We are told, however, that the doubts which might otherwise have existed as to the real intention of the parties have been wholly removed by the testimony of Hr. Ellingwood, who has positively sworn that the suits in question were those which were contemplated by the parties when the agreement was executed, and to which the indemnity then promised was meant to apply; and hence it has beemargued that the question whether the defendants were or were not interested in these suits as trustees must be regarded 'as wholly unimportant, and the declaration that they were so be rejected as immaterial. But our own views are widely different. The question of the interest of the defendants is regarded by us as the vital question in the cause, the declaration of, their interest as a necessary part of their agreement, and the proof, as indispensable to the relief which the plaintiff seeks to obtain ; and hence the testimony of Hr. Ellingwood, so far as it is inconsistent with these views, must be rejected. Admitting for the present that the true im- • port of his testimony is such as has been stated, it stands in plain opposition to the written agreement of the parties; and the object of its introduction was not to explain that agreement,but to overrule it. It appears from the case that this objection to his testimony was raised at the special term; and upon the fullest consideration we are satisfied that it ought to have, prevailed. It is doubtless true that in many cases parole evidence not only may .but must he admitted, to determine and define the subject-matter of a contract; but the evidence is only to be admitted when it is purely explanatory, never where it is plainly contradictory. In the present case, as the terms of the agreement were general, parole evidence was necessary to fix their application. Hence Hr. Ellingwood was a competent witness to prove what were the suits then pending to which the agreement referred, and how the defendants, as trustees, *77 were interested in their prosecution or defence; hut he was no more competent to prove that the agreement was meant to embrace suits in which the defendants were not interested than to prove that it embraced suits already terminated, or not then commenced. The actual pending of the suits was no more a necessary condition of the liability they meant to assume than their actual interest. The agreement limits the indemnity it promises to suits in which the trustees as such were interested: the evidence of Mr. Ellingwood is relied on as proving that it extended to suits in which they had no interest whatever. The contradiction is direct and positive.
Entertaining these views, we deem it needless to inquire whether we are hound to adopt that construction of the testimony of Mr. Ellingwood, upon which the counsel for the plaintiff have insisted. We content ourselves with remarking, that were we compelled to act upon his testimony as stated in the case, we should have great difficulty in saying that he meant to swear, that the suit upon the bond was actually commenced before the execution of the agreement. The heavy expenses that were likely to he incurred in the chancery suit, we understand him as saying, suggested to his mind the propriety of procuring for his client, Stainer, the bond of indemnity which the defendants consented to execute. We have seen that the chancery suit was instituted in October, 1838, and, from the nature of the controversy, it must soon have been known that the expenses of its prosecution would he heavy; and it is therefore very improbable, that nearly eighteen months were suffered to elapse before the indemnity, to which Mr. Ellingwood thought his client was entitled, was in fact required. It is true, he says, that when the indemnity was required, there was a chance that his client would be liable on the bond, hut that chance was just as probable when the chancery suit was instituted; and if it had weighed with the parties, it would doubtless have caused an express stipulation to indemnify against the bond by name. He says nothing of the expenses of such a suit, and his language seems rather to indicate that it was anticipated, than that it was commenced.
It is not, however, alone upon the grounds, and for the reasons that have been stated, that we hold ourselves bound to *78 reverse the judgment from which this appeal is taken. Waiving all objections to the testimony of Mr. Ellingwood, not only to its import, but. its admissibility, and, considering the fact to be established, that the suits relative to the bond and mortgage are those to which the agreement must be construed to relate, we are then constrained to say, that it is an agreement which the defendants, as trustees, had no right to make, and we, either as a court of law or equity, are not bound to enforce. If the defendants agreed to indemnify Stainer against the costs, damages, and charges, arising from these suits, out of the property assigned to them, they violated their trust, and, in decreeing the execution of such an agreement, we should violate all the principles by which courts of equity, in judging of such transactions, have hitherto been governed. „
The rights of the partnership creditors were fixed by the assignment, and without their knowledge and consent could not be varied by any subsequent act of the partners, or of the trustees. By the terms of the assignment, all the property which it embraced was irrevocably devoted to the ratable satisfaction of the partnership debts; nor without a manifest breach of good faith, and of the trust thus created, could any portion of it be applied, or be rendered applicable to any other purpose. To sustain an agreement involving such a misapplication of the trust property would be to sanction an act, which, according to the doctrine, and in the language of equity, whatever may have been the motives of the parties, must be deemed and declared a fraud.
Sensible of the force of this objection, the learned counsel for the plaintiff endeavored to meet it by requiring us to presume that the indemnity to Stainer which the agreement was meant to secure, wa&puflBsed to him at the time of the assignment, and was in reality a condition upon which the assignment was made; but it is impossible for us to act upon such a presumption'. It is something- more than gratuitous and arbitrary. It is not only not justified by any facts that have been given in evidence, but as we read and understand the testimony of Mr. Ellingwood, is positively repelled. As the counsel of Stainer, Dutilh & Co., he drew the assignment, and if a promise of indemnity had then been exacted and given, he must *79 have known, and we doubt not would have stated the fact; so far from stating the fact, we understand him as swearing that the indemnity as given was the result not of any" previous engagement, but solely of his own recommendation and advice— advice which was certainly not given until many months after the execution of the assignment. For aught that appears in the evidence, there was no thought of an indemnity until the suit in chancery had been commenced.
We are not to be understood as saying, that had the nature of the transaction been proved to be such as the counsel for the plaintiff was forced to assume, our own views as to the justice and law of the case would have been materially altered. We are disposed to think, that a clandestine promise to indemnify Stainer from the" proceeds of the property assigned, must still have been regarded by us as fraudulent and void, even had it been shown to be, as between the mumed/iaU parties, the consideration of the assignment; that question, however, is certainly not before us, and is therefore.not necessary to be decided.
Upon the case as it actually is, we are clear in the opinion that the plaintiff is not entitled to the relief which he seeks, even if we adopt that interpretation pf the agreement which is most favorable to his claim. We cannot give to the plaintiff, as the assignee of Stainer, any portion of the funds, which, by the joint and irrevocable act of Stainer and his partner, had become the exclusive property of their creditors. The judgment at Special Term is, therefore, reversed, and the complaint dismissed with costs, except the costs of this appeal.